NELSON P. COHEN
United States Attorney

STEPHAN A. COLLINS
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: stephan.collins@usdoj.gov
AK # 8911061

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case  No.  3:02-cr-00088 (RRB) |
| | ) | |
| Plaintiff, | ) | |
| | ) | WRITTEN SUMMATION |
| vs. | ) | REGARDING SUPERVISED |
| | ) | RELEASE VIOLATION |
| CHARLENE CORTEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Charlene Cortez is alleged to have violated the conditions of her supervised

release by consuming cocaine on three occasions.  The allegations are based on

three urine samples she provided on April 27, May 1, and June 15, 2006 that

subsequently tested positive for the presence of cocaine benzoylecgonine, the

cocaine metabolite, in her system thereby indicating that she ingested cocaine prior to submitting the three urine samples.  All three tests indicated the presence of this metabolite at levels of at least 150 nano grams per milliliter ng/ml, the cutoff level for a positive test result.  At the time Cortez submitted the urine samples, she was still subject to the three year term of supervised release the Court imposed following her conviction in 2003 for conspiracy to possess with intent to distribute cocaine, a violation of Title 21 United States Code Section 846.  Cortez commenced her term of supervised release on April 28, 2004.

Cortez's ingestion of cocaine on the three dates is established by the test results performed by Scientific Testing Laboratories, Inc. on the three urine samples bearing the specimen numbers C00466724–which corresponds to the April 27, 2006 urine sample; C00466729 C00466724–which corresponds to the May 1, 2006 urine sample; and C00466772 C00466724–which corresponds to the June 15, 2006 urine sample.  Cortez was the one who supplied the urine for each sample .  It was her urine to which the United States Probation Office affixed the specimen tracking label, which bore the specimen numbers.  And it was her urine Scientific Testing Laboratories, Inc. confirmed tested positive for the presence of cocaine after the United States Probation Office performed an initial field test on each urine sample, which field test gave the initial indication for the presence of

cocaine.  Based on these testing results, there is more than a preponderance of evidence that Cortez ingested cocaine on the three particular occasions alleged in the petition to revoke.

Cortez's challenges to the allegations are invalid.  First she argues the chain of custody is insufficient to support the inference that it was in fact her urine submitted to Scientific Testing Laboratories, Inc.  Her argument is without merit. She is the one who submitted the urine; she admitted this.  She has not realistically challenged the affixation of the particular specimen labels to her urine samples. She admitted signing the collection documents, which bore the specific specimen numbers.  Nor has she realistically cast any doubt that it was her urine that was sent to Scientific Testing Laboratories, Inc.  She has completely failed to establish that every time she submitted the urine samples, someone else's urine was in the collection cups or that the collecting officer was taking urine samples from anyone else at the same time as she was submitting urine that could possibly have been mixed up with her samples.  She has failed to explain how the chain of custody was broken.  The uncontradicted evidence on the record established that the samples she submitted with the particular and specific specimen numbers attached to them arrived at Scientific Testing Laboratories, Inc. with the exact same specimen numbers, her name, and the specific information about the dates of

collection for each sample.  How else could the laboratory have obtained this

information but for receiving the particular samples with the specific information.

The testing result reports contradict her argument that it could not have been her

samples the laboratory tested.  She simply argues there is no evidence that it was in

fact her urine that made it to the laboratory.

She further argues that even if the samples were hers that made it to the

laboratory, the testing protocols was not sufficiently established to justify the

Court's reliance upon the results.  The testimony from Ms. Taney-Mock

established the testing protocols, the process through which the samples were

tested, and the individual results for each sample.  Cortez has never established that

the testing procedures were not followed or that the particular tests ended in

erroneous results or that her urine did not show evidence of cocaine ingestion.

As a fall back position, Cortez has taken the fall back approach  of arguing

that even if it were her urine that the laboratory tested and that her urine tested

positive for the ingestion of cocaine, that it was not she who consumed the cocaine

but was in fact her former husband who transmitted cocaine through sexual

contact.  This in an incoherent story.  First, she testified that her husband smoked

cocaine base; she never saw him with powder cocaine.  Both Ms. Taney-Mock and

Cortez's own witness, Dr. Jain, testified that cocaine base can not be transmitted

from one person to another by simple touch, irrespective of where the recipient was touched.  Second, Cortez testifies that she only noticed a gray tinge to her husbands hand after one sexual encounter.  She never testified that she saw cocaine in any form on any other part of her husband's anatomy during sexual contact.  Dr. Jain testified that cocaine has a numbing effect upon the part where cocaine is applied.  Yet, Cortez never described ever feeling numb anywhere after sexual contact with her husband.   The reason why she did not provide such testimony is because it did not happen that way.  Cortez has only offered this implausible excuse to cover up her own consumption of cocaine.  Her husband may have been the one who supplied the cocaine to her, but that does not excuse her violating the terms of her supervised release  by ingesting it.

For these reasons, the Court should find that Cortez violated the terms and conditions of her supervised release by ingesting cocaine, as established

\\

\\

\\

by the urine samples she provided.

RESPECTFULLY SUBMITTED this day, September 14, 2006, in

Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/Stephan A. Collins
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: stephan.collins@usdoj.gov
AK # 8911061

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2006
a copy of the foregoing was served
electronically:

s/ Stephan A. Collins