UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br> v.<br><br>CHARLENE CORTEZ,<br><br>      Defendant. | No. A02-088 CR (RRB)<br><br>DEFENDANT'S WRITTEN SUMMATION REGARDING REVOCATION OF SUPERVISED RELEASE |

The Government alleges that Charlene Cortez on three occasions (on or about April 27, 2006, May 1, 2006, and June 15, 2006) "consumed cocaine, as evidenced by a positive drug test". These allegations form the basis for the Government asking the court to revoke Cortez' supervised release. Cortez denied using cocaine. The only evidence against her are UA laboratory test results which were objected to at the hearing. The admission of the UA laboratory test results was error because it was hearsay, the court did not do the balancing test required by the Supreme Court, and the Government failed to present any testimony to establish the chain of custody to prove that the samples given by Cortez were in fact the

DEFENDANT'S WRITTEN SUMMATION REGARDING REVOCATION OF SUPERVISED RELEASE – Page 1

*Alling Lane*
A Professional Services Corporation
Attorneys at Law

1102 Broadway Plaza, #403
Tacoma, Washington 98402
Tacoma: (253) 627-1091
Seattle: (425) 251-5938
Facsimile: (253) 627-0123

1    samples which were tested to obtain the test results.  Because of the gross failure of the

2    Government to prove that the test results were of the samples provided by Cortez there are no

3    verified facts that support a finding that Cortez possessed cocaine.

4    　　　　The United States Supreme Court has held that certain minimal due process

5    requirements pertain to parole revocation proceedings (*Morrissey v. Brewer*, 408 U.S. 471

6    (1972)) and to probation revocation proceedings (*Gagnon v. Scarpelli*, 411 U.S. 778 (1973)).

7    *United States v. Martin*, 984 F.2d 308, 310 (9th Cir. 1993).  Fed. R. Crim. P. 32.1 incorporates

8    those same minimal due process requirements into proceedings for revocation of supervised

9    release.  *Id*.

10   　　　　One of those due process rights is the right to confront witnesses.  *Id*.  This right is

11   construed to require that a supervised releasee receive a fair and meaningful opportunity to

12   refute or impeach the evidence against her in order to insure that the finding of a violation will

13   be based upon verified facts.  *Id*., citing, *Morrissey*, 408 U.S. at 484.  The Ninth Circuit

14   balances the releasee's right to confrontation against the Government's good cause for

15   denying it based upon the facts of each case.  *Id*. at 310-11.

16   　　　　The importance of the evidence to the court's ultimate finding follows from the

17   Supreme Court's emphasis on assuring that findings be based upon "verified facts."  *Id*.

18   Laboratory results of UA tests are uniquely important to the Government's contention that

19   Cortez possessed a controlled substance.  The Government offered no other evidence that

20   Cortez possessed a controlled substance.  In identical circumstances the Ninth Circuit held

21   that such laboratory results are uniquely important to the court's findings, which gives the

22

23

DEFENDANT'S WRITTEN SUMMATION
REGARDING REVOCATION OF SUPERVISED
RELEASE – Page 2

*Alling Lane*
A Professional Services Corporation
Attorneys at Law

1102 Broadway Plaza, #403
Tacoma, Washington 98402
Tacoma: (253) 627-1091
Seattle: (425) 251-5938
Facsimile: (253) 627-0123

1   releasee a very strong interest in the evidence. *Id*. at 311. This is sufficient under *Martin*,

2   *supra*, to find a denial of due process.

3       Here, the importance to Cortez is heightened because if the court finds her guilty of all

4   three alleged violations, the penalty is mandatory under 18 U.S.C. 3583(g)(4) and the court

5   must revoke release and require the releasee to serve a term of imprisonment. *See*, *id*. at 312.

6   Under the holdings of *Martin*, Cortez has a substantial right and the Government's good cause

7   for denying confrontation must be particularly significant in order to outweigh Cortez' right.

8   *Id*.

9       In *Martin*, the Ninth Circuit rejected the Government's argument that UA's are so

10  inherently reliable that they may be introduced in any revocation hearing. The court stated

11  that neither the Government nor other cases demonstrate that custody problems and testing

12  errors happen with such rarity at testing laboratories that their reports are always inherently

13  reliable. *Id*. at 313. The Ninth Circuit recognized that if it adopted such a rule it would

14  effectively hold that the weight of the releasee's right to confrontation is irrelevant in

15  revocations involving UAs. *Id*. The court concluded that trial courts should apply the

16  balancing test to every alleged violation of the *Morrissey* right of confrontation, including

17  UAs. *Id*. at 314.

18      Although the Federal Rules of Evidence do not apply in proceedings to revoke

19  supervised release, the admissibility of hearsay is not automatic. *United States v. Frazier*, 26

20  F.3d 110, 114 (11th Cir. 1994). The due process rights recognized in *Morrissey* and *Gagnon*

21  require trial courts, in deciding whether or not to admit hearsay, to balance the defendant's

22

23

DEFENDANT'S WRITTEN SUMMATION
REGARDING REVOCATION OF SUPERVISED
RELEASE – Page 3

*Alling Lane*
*A Professional Services Corporation*
Attorneys at Law

1102 Broadway Plaza, #403
Tacoma, Washington 98402
Tacoma: (253) 627-1091
Seattle: (425) 251-5938
Facsimile: (253) 627-0123

1  right to confront witnesses against the grounds asserted by the Government for denying

2  confrontation. *Id*. In addition, the hearsay statement must be reliable. *Id*.

3  When ruling on the admissibility of hearsay, such as UA test results, trial courts are

4  required to conduct the balancing test under *Morrissey* and its progeny. In *Martin*, the Ninth

5  Circuit rejected blanket admissibility of UA test results because they are not inherently

6  reliable because of "custody problems and testing errors happen." *Id*. at 313. This places the

7  burden on the Government to present evidence that the chain of custody is unbroken. Only

8  then can the court be assured that revocation is based on "verifiable facts."

9  The astonishing fact in this case is that the Government did not even try to prove the

10  chain of custody of the UA samples provided by Cortez. The testimony was that the samples

11  were given and placed in a refrigerator in Anchorage. No witness testified that the samples

12  were removed from the refrigerator. Under the state of the evidence, the court does not know

13  if they were ever removed. Nor was any testimony presented as to how the samples were

14  transported from Alaska or where they ended up. The Government wants the court to assume

15  that transportation of the samples occurred, and that it was done in a safe manner where not

16  adulterants were added to the samples. Even with such assumptions the chain would not be

17  complete because no testimony was offered that verified that the samples given by Cortez

18  were indeed received by the lab.

19  The lack of proof of chain of custody is even more apparent with respect to specimen

20  no. C00466729. The evidence revealed that a label that was supposed to have been secured to

21  the outside of the package containing the sample was still on the exhibit in the courtroom and

22  was never placed on the container.

23

DEFENDANT'S WRITTEN SUMMATION
REGARDING REVOCATION OF SUPERVISED
RELEASE – Page 4

*Alling Lane*
A Professional Services Corporation
Attorneys at Law

1102 Broadway Plaza, #403
Tacoma, Washington 98402
Tacoma: (253) 627-1091
Seattle: (425) 251-5938
Facsimile: (253) 627-0123

Ms. Tarnaimoak testified that the laboratory was required to follow SAMSHA guidelines. Those guidelines were published in 59 FR 29908, on June 9, 1994. The definition of Chain of Custody, in section 1.2 definitions, states as follows:

> *Chain of Custody.* Procedures to account for the integrity of each urine specimen by tracking its handling and storage from point of specimen collection to final disposition of the specimen. These procedures shall require that an Office of Management and Budget (OMB) approved specimen chain of custody form be used from time of collection to receipt by the laboratory and that upon receipt by the laboratory an appropriate laboratory chain of custody form(s) account for the specimens and samples within the laboratory. Chain of custody forms shall, at a minimum, include an entry documenting date and purpose each time a specimen or sample is handled or transferred and identifying every individual in the chain of custody.

The regulations in section 2.2(i) state as follows:

> (i) *Transportation to Laboratory.* Collection site personnel shall arrange to ship the collected specimens to the drug testing laboratory. The specimens shall be placed in containers designed to minimize the possibility of damage during shipment, for example, specimen boxes or padded mailers; and those containers shall be securely sealed to eliminate the possibility of undetected tampering. The collection site personnel shall ensure that the specimen chain of custody form is enclosed within each container sealed for shipment to the drug testing laboratory. Since specimens are sealed in packages that would indicate any tampering during transit to the laboratory and couriers, express carriers, and postal service personnel do not have access to the chain of custody forms, there is no requirement that such personnel document chain of custody for the package during transit.

Even though the Government's witness testified these guidelines applied, she did not testify that they had been complied with. In fact, she could not testify that 2.2(i) had been complied with – only the person who packaged the containers for shipment in Anchorage could testify as to the procedures followed. No one testified that the section was followed.

The Government had the opportunity to prove up the chain of custody for each sample. It chose not to do so. The Government wants this court to find against Cortez even though there was no testimony presented from which the court could conclude that the test

DEFENDANT'S WRITTEN SUMMATION
REGARDING REVOCATION OF SUPERVISED
RELEASE – Page 5

*Alling Lane*
*A Professional Services Corporation*
*Attorneys at Law*

1102 Broadway Plaza, #403
Tacoma, Washington 98402
Tacoma: (253) 627-1091
Seattle: (425) 251-5938
Facsimile: (253) 627-0123

results were actually for the UA samples given by Cortez. The UA test results testified too could have been for other samples with similar numbers. The person testifying for the government did not even review the chain of custody documents (which were ostensibly in front of her) and testify to whether chain of custody procedures had been followed. This is not merely an issue that goes to the weight of the evidence, but a complete failure of reliable evidence.

Even though the testimony established that the SAMSHA guidelines govern the actions of the laboratory, the Government did not establish by testimony that those procedures were followed. Cortez' expert testified that without following those procedures, including chain of custody, there was no way to know that the results were valid. With respect to all three specimens, the Government's witness testified that none tested positive under the immunoassay test. She testified that specimen C00466772 was not even subjected to that test. Yet the regulations in section 2.4(e)(3) states as follows:

> Specimens that test negative on all initial immunoassay tests will be reported negative. No further testing of these negative specimens for drugs is permitted and the specimens shall either be discarded or pooled for use in the laboratory's internal quality control program.

Under this regulation the samples should have been discarded, not tested further, and reported as negative. Had that process been followed, this revocation proceeding would never have been initiated.

In light of the complete failure of the government to present any evidence on the chain of custody, the hearsay contained in the UA test results cannot be considered to be "verified facts." Yet, the Supreme Court requires that revocation proceedings be supported by such

DEFENDANT'S WRITTEN SUMMATION
REGARDING REVOCATION OF SUPERVISED
RELEASE – Page 6

*Alling Lane*
A Professional Services Corporation
Attorneys at Law

1102 Broadway Plaza, #403
Tacoma, Washington 98402
Tacoma: (253) 627-1091
Seattle: (425) 251-5938
Facsimile: (253) 627-0123

1  "verified facts" in order for minimal due process requirements to be met.  The admissibility of

2  the laboratory results under the state of the evidence violates basic tests for the Government to

3  prove its case with respect to the chain of custody and results in a violation of Cortez' right to

4  confront witnesses.

5       In addition, Cortez presented testimony of an expert concerning how cocaine could

6  have been introduced to her body without her even knowing it.  That testimony combined

7  with Cortez' testimony that she did not use cocaine refutes the Government's case.

8       This court is asked to recognize the importance of chain of custody and laboratory

9  errors that was recognized in Martin.  Even if this court views the lack of a chain of custody

10  as only going to the weight of the evidence, the court should still find that the Government

11  has not proven its case because there is no evidence that there is a chain of custody linking the

12  samples given by Cortez to the test results proffered by the Government.

13

14       Dated this 21st day of August, 2006.

15                                                SMITH ALLING LANE, P.S.

16

17                                           /s/ Joseph R. D. Loescher
                                         1102 Broadway Plaza, # 403

18                                           Tacoma, WA  98402
                                         Ph:   253-627-1091

19                                           Fax: 253-627-0123
                                         E-mail:  joel@smithallinglane.com

20                                           Alaska Bar No. 7911108

21

22

23

DEFENDANT'S WRITTEN SUMMATION
REGARDING REVOCATION OF SUPERVISED
RELEASE – Page 7

*Alling Lane*
*A Professional Services Corporation*
*Attorneys at Law*

1102 Broadway Plaza, #403
Tacoma, Washington 98402
Tacoma: (253) 627-1091
Seattle: (425) 251-5938
Facsimile: (253) 627-0123

1

2  CERTIFICATE OF SERVICE

3   I hereby certify that on the date below a true
   and correct copy of this document was delivered
4  via fax and e-mail delivery to:

5
   Stephan Collins, Asst. U.S. Attorney
6  U.S. Department of Justice
   Federal Building/US Courthouse
7  222 West 7th Avenue, #9, Room 253
   Anchorage, Alaska 99513-7567
8
   Dated this 21st day of August, 2006.
9

10  /s/ Joseph R. D. Loescher

11

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANT'S WRITTEN SUMMATION
REGARDING REVOCATION OF SUPERVISED
RELEASE – Page 8

*Alling Lane*
*A Professional Services Corporation*
*Attorneys at Law*

1102 Broadway Plaza, #403
Tacoma, Washington 98402
Tacoma: (253) 627-1091
Seattle: (425) 251-5938
Facsimile: (253) 627-0123